## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| Michael Brandon Nauroth, | : | Case No. 1:07-CV-539 |
| | : | |
| Plaintiff, | : | Chief Judge Susan J. Dlott |
| | : | |
| v. | : | ORDER GRANTING |
| | : | DEFENDANTS MOTION FOR |
| Southern Health Partners, Inc., | : | SUMMARY JUDGMENT AND |
| | : | DENYING PLAINTIFF'S |
| Defendant. | : | MOTION FOR LEAVE TO |
| | : | AMEND THE COMPLAINT |

This matter is before the Court on Defendant Southern Health Partners, Inc.'s Motion for

Summary Judgment (doc. 40) and Plaintiff Michael Brandon Nauroth's Motion for Leave to

Amend the Complaint to add Warren County, Ohio, as a Defendant (doc. 45). For the reasons

that follow, the Court **GRANTS** Defendant' s motion for summary judgment and **DENIES**

Plaintiff's motion for leave to amend the complaint.

## I.      BACKGROUND

### A.      Factual Background[1]

---

[1] The factual background is based largely on Defendant's Proposed Undisputed Facts
(doc. 41), which Defendant filed pursuant to this Court's Standing Order Governing Civil
Motions for Summary Judgment (hereinafter "Standing Order"). Plaintiff failed to comply with
the Standing Order, which requires the opponent to file a response to the proposed undisputed
facts stating "whether each of the facts asserted by the moving party is admitted or denied."
(Standing Order at 1, ¶(A)(2).) Plaintiff also did not include a statement of facts in his
Memorandum in Opposition to Defendant's Motion for Summary Judgment. Paragraph (A)(1)
of the Standing Order explicitly provides that "All material facts set forth in [the movant's
statement of proposed undisputed facts] will be deemed admitted unless controverted by the
statement required to be filed and served by the opposing party in accordance with (A)(2) of this
Standing Order." To the extent that the evidence before this Court does not contradict the

1

**1.      Nature and Extent of Plaintiff's Medical Care While Incarcerated**

Defendant Southern Health Partners, Inc. (hereinafter "Southern Health") is a private entity that specializes in providing medical care to inmates in small to mid-sized correctional facilities.  (Defendant's Proposed Undisputed Facts (hereinafter "Undisputed Facts"), Doc. 41 ¶ 1.)  During the time period in question, Southern Health operated under a contract with Warren County, Ohio to provide medical services to inmates housed in the Warren County Jail.  (Id. ¶ 2.)  Warren County has a policy prohibiting the prescription and administration of Methadone to inmates.  (Id. ¶ 4.)  As a result of that policy, Southern Health developed a policy and procedure that required a withdrawal and treatment plan for Methadone users in the Warren County Jail.  (Hairsine.Aff. ¶ 12;[2] Undisputed Facts ¶ 6.)

The policies and procedures of Southern Health, including its policies pertaining to Methadone users, are based upon the standards of the National Commission on Correctional Health Care ("NCCHC").  (Hairsine Aff. ¶¶ 8, 13; Undisputed Facts ¶ 7.)  The NCCHC is a non-profit organization that provides recommendations for managing the delivery of medical and mental health care in correctional systems and serves as a guide to providing the best correctional healthcare to inmates.  (Hairsine Aff. ¶ 5; Undisputed Facts ¶ 7.)  The standards established by the NCCHC are considered the gold standard in correctional healthcare.  (Hairsine Aff. ¶ 6; Undisputed Facts ¶ 8.)  During the relevant time period, the Warren County Jail was

statements set forth in Plaintiff's Proposed Undisputed Facts, the Court deems those statements admitted.

[2] The affidavit of Jennifer Hairsine, the Executive Vice President and Chief Operating Officer of Southern Health, is attached to Defendant's motion for summary judgment as Exhibit A.  (Doc. 40-2.)

NCCHC certified, meaning that it was accredited by NCCHC after conforming the jail policies and procedures to the NCCHC Standards. (Hairsine Aff. ¶ 7; Undisputed Facts ¶ 9.)

Plaintiff was incarcerated in the Warren County Jail during two separate periods in 2005 and 2006. (Nauroth Dep. 7:4-24.)[3] Prior to his initial incarceration in 2005, Plaintiff was prescribed a number of medications, including Methadone, Valium, Neurontin, and Celebrex, for the treatment of symptoms caused by a congenital bone disease, Spondyloepiphyseal Dysplasia Tarda ("SEDT"). (See Complaint, Doc. 1 ¶ 2; Nauroth Dep. 15:14-17:12.) In December 2005, Plaintiff was arrested and charged with the possession and sale of narcotics after he was caught selling his methadone pills to a confidential informant. (Nauroth Dep. 14:25-16:12.) Plaintiff was first incarcerated in connection with those charges on December 23, 2005. (See Miguel Aff. Ex. 1; Complaint ¶ 3.)

Plaintiff alleges that during the medical screening conducted by Southern Health medical staff in 2005, he indicated that he was taking Methadone, Valium, Neurontin, and Celebrex as prescription medications. (Complaint ¶ 3.) Plaintiff further alleges that the individual conducting the screening erroneously noted that Plaintiff was using Methadone as a street drug, and that, as a result of the purported error, Plaintiff was placed on a drug withdrawal protocol and deprived of his prescription Methadone.[4] (Id.) Though Plaintiff does not mention it in his Complaint or elsewhere, he also was not permitted to take Valium while in jail. The

---

[3] Defendant Nauroth's deposition is attached to Defendant's motion for summary judgment. (Docs. 40-7, 40-8.)

[4] Nauroth's December 23, 2005 Medical Screening form lists Methadone, Valium, Neurontin, and Celebrex as medications prescribed by a doctor, but also notes in response to the question "Do you regularly use alcohol or street drugs," "Yes[,] Methadone[.] States he will go through detox." (Miguel Aff. Ex. 1.)

detoxification allegedly caused Plaintiff to suffer withdrawal symptoms, including sleeplessness and vomiting of blood, and resulted in Plaintiff being taken to the emergency room of a local hospital.  (Id.)

The following year, Plaintiff was incarcerated again, on the same charges, from September 7, 2006 to October 3, 2006.  (Nauroth Dep. 31:10-12.)  Plaintiff was still taking Methadone as prescribed by his treating physician at that time.  (See Miguel Aff. Ex. 1.)  As a result, the Southern Health medical staff once again placed Plaintiff on a drug withdrawal protocol.  (Id.)  Plaintiff alleges that as a result of the withdrawal protocol he suffered "severe pain throughout his body, muscle spasms in his back and legs, and sleeplessness."  (Complaint ¶ 4.)  Plaintiff further alleges that when he was released from jail in October 2006, he resumed taking Methadone and suffered severe reactions, including slipping into a coma.  (Id. ¶ 5.)

On both occasions when Plaintiff underwent withdrawal at the Warren County Jail, Southern Health medical staff placed him on an opioid detoxification regimen in an attempt to minimize Plaintiff's physiologic response to being taken off Methadone.  (Undisputed Facts ¶ 13; Miguel Aff. ¶ 7.[5])  In September 2006, during Plaintiff's second period of incarceration, Southern Health medical staff offered Plaintiff Robaxin and Naprosyn to combat the muscles spasms, inflamation, and pain he experienced in connection with his SEDT, but Plaintiff refused to take those medications.[6]  (Undisputed Facts ¶ 18; Miguel Aff. ¶ 10.)  On September 14, 2006, Plaintiff was taken out of the Warren County Jail to see his treating physician, Dr. Shannon

---

[5] As described below, Rafael Miguel, M.D. was retained by Defendant to provide an expert opinion in this case.  His affidavit is attached to Defendant's motion for summary judgment.  (Doc. 40-3.)

[6] In his affidavit, Dr. Miguel states that in his experience, such a refusal of medication is characteristic of aberrant drug use.  (Miguel Aff. ¶ 10; Undisputed Facts ¶ 19.)

Grubb. (Undisputed Facts ¶ 20; Miguel Aff. ¶ 11.) Dr. Grubb was aware that Plaintiff was undergoing a detoxification program due to that fact that the jail did not permit inmates to take Methadone or Valium. (Undisputed Facts ¶ 21; Miguel Aff. ¶ 11.) Dr. Grubb noted that Plaintiff's muscle spasms were returning, and noted that Plaintiff was receiving Clonidine as a part of the detox protocol. (Undisputed Facts ¶ 22; Miguel Aff. ¶ 11.) Dr. Grubb prescribed Plaintiff Xanax, believing Plaintiff could take it in jail. (Undisputed Facts ¶ 24; Miguel Aff. ¶ 11.) Finally, Dr. Grubb made a note that because he had prescribed Plaintiff Methadone and Valium on September 5, 2006 and Plaintiff was not allowed to take those pills in jail, Plaintiff would still have a month's supply when he was released from jail. (Undisputed Facts ¶ 25; Miguel Aff. ¶ 12.)

On October 6, 2006, three days after being released from jail, Plaintiff was admitted to Bethesda North Hospital for a possible drug overdose. (Undisputed Facts ¶ 27; Miguel Aff. ¶ 13.) Plaintiff's family members reported that he had been "acting high" since he got out of jail (Undisputed Facts ¶ 28; Miguel Aff. ¶ 13.) Plaintiff reported to the physicians at the hospital that he had stopped taking Methadone while in jail, and that when released from jail he resumed taking Methadone at the same dosage prescribed prior to his incarceration. (Undisputed Facts ¶ 29; Miguel Aff. ¶ 13.) Plaintiff suffered no lasting effects from his withdrawals in December 2005 and September 2006, or from his overdose in October 2006. (Undisputed Facts ¶ 39; Miguel Aff. ¶ 19.)

      **2.**      **Expert Opinion Regarding Southern Health's Detoxification Policies and Procedures and the Level of Medical Care Plaintiff Received**

With regard to the soundness of its withdrawal and treatment plan for Methadone users, Defendant relies on the affidavit of its expert, Rafael Miguel, M.D. (<u>See</u> Miguel Aff.) In addition to serving as a Professor and the Director of the Pain Medicine Program at the University of South Florida College of Medicine, Dr. Miguel also is an Attending Anesthesiologist/Pain Physician at the Brandon Ambulatory Surgery Center, H. Lee Moffitt Cancer Center, and Tampa General Hospital and a Pain Physician at Sarasota Memorial Hospital. (Miguel Aff. ¶ 2.) In connection with rendering the opinions contained in his affidavit, Dr. Miguel reviewed Nauroth's medical records from the Warren County Jail, Deerfield Family Practice, and Bethesda North Hospital, and the depositions of Nauroth and Nauroth's treating physician, Dr. Grubb. (<u>Id.</u> ¶ 4.) As to the general policies of Southern Health, Dr. Miguel noted that Southern Health has to work within the confines of the correctional setting when weaning inmates off controlled substances and concluded that the detoxification protocol put in place by the Medical Director of Southern Health at the Warren County Jail was appropriate given the policies and procedures of the jail prohibiting the administration of Methadone to inmates. (<u>Id.</u> ¶¶ 5, 6; Undisputed Facts ¶¶ 10, 11.)

Dr. Miguel also concluded that Southern Health medical staff acted properly in placing Plaintiff on its opioid detoxification regimen and that the care and treatment rendered to Plaintiff met or exceeded the standard of care by medical professionals under similar circumstances and conditions. (Miguel Aff. ¶¶ 7, 21; Undisputed Facts ¶¶ 13, 41.) Despite Plaintiff's complaints about the withdrawal process, Dr. Miguel's review of Plaintiff's medical records led him to conclude that Plaintiff was not suffering from major withdrawal in either December 2005 or September 2006. (Miguel Aff. ¶ 9; Undisputed Facts ¶ 17.) According to Dr. Miguel, a realistic

goal of such regimens is to minimize the opioid withdrawal syndrome, not to eliminate it. (Miguel Aff. ¶ 8; Undisputed Facts ¶ 14.)  Any person who is weaned off of a potent opioid such as methadone is expected to experience some symptoms, such as vomiting and diarrhea. (Miguel Aff. ¶ 8; Undisputed Facts ¶ 15.)

Finally, Dr. Miguel concluded that Plaintiff's October 6, 2009 overdose was not caused by an act or omission of any agent of Southern Health.  (Miguel Aff. ¶ 20; Undisputed Facts ¶ 40.)  Dr. Miguel indicated that Dr. Grubb, the physician who had prescribed the Methadone for Plaintiff, should have warned Plaintiff of the dangers of returning to his pre-incarceration dose upon release from jail.[7]  (Miguel Aff. ¶ 17; Undisputed Facts ¶ 36.)  According to Dr. Miguel, people taking Methadone metabolize and respond to the drug differently.  (Miguel Aff. ¶ 14; Undisputed Facts ¶ 30.)  Because of the long half-life of Methadone and the possibility of severe side effects, the resumption of Methadone following a period of withdrawal should be done through dosage titration and should be completed slowly and with frequent monitoring.  (Miguel Aff. ¶ 14; Undisputed Facts ¶ 31.)  It can take four to five days for the level of Methadone to reach steady-state concentrations, or stabilize, in a person's system.  (Miguel Aff. ¶ 16; Undisputed Facts ¶ 33.)  Toxicity also occurs more frequently in patients such as Plaintiff who were previously exposed to high doses of opioids.  (Miguel Aff. ¶ 16; Undisputed Facts ¶ 34.) The addition of another narcotic sedative, such as Valium, has been shown to increase the sedative and respiratory effects of Methadone.  (Miguel Aff. ¶ 16; Undisputed Facts ¶ 35.)

---

[7] After approximately one week of each withdrawal period in December 2005 and September 2006, Plaintiff would no longer have been physically addicted to Methadone. (Miguel Aff. ¶ 9; Undisputed Facts ¶ 16.)

There is no evidence that Dr. Grubb advised Plaintiff to titrate his Methadone once he was released from jail. (Undisputed Facts ¶ 26; Miguel Aff. ¶ 12.) Dr. Grubb had the opportunity to do so when he examined Plaintiff on September 16, 2009. (Undisputed Facts ¶ 37; Miguel Aff. ¶ 17.) Nonetheless, Dr. Grubb admitted that he did not remember ever telling Plaintiff about the need to titrate Methadone or advising him of the dangers of returning to his full dose after his release from the Warren County Jail. (Undisputed Facts ¶ 32; Grubb Dep. 46:10-11.[8])

### B. Procedural Background

On July 13, 2007, Plaintiff brought this action against Defendants Southern Health and Warren County Sheriff Tom Ariss, in his individual capacity, asserting a claim under 42 U.S.C. § 1983 for Defendants alleged failure to provide proper medical care to Plaintiff while Plaintiff was serving time in the Warren County jail. (Doc. 1.) On November 15, 2007, the parties filed a Joint Discovery Plan specifying that Rule 26 (a) initial disclosures were to be served by December 17, 2007 and that Plaintiff's disclosure of experts and the accompanying expert report were to be served no later than April 15, 2008, with Defendants' report due June 15, 2008. (Doc. 6.) A Scheduling Order adopting those deadlines was subsequently signed by Magistrate Judge Black and filed by this Court on November 26, 2007. (Doc. 7.)

On December 17, 2007, Southern Health Partners served its initial disclosures pursuant to Fed. R. Civ. P. 26 (a) and the Joint Discovery Plan. Plaintiff failed to serve his initial disclosures. Additionally, Plaintiff never served an expert disclosure or an expert report. Given Plaintiff's failure to participate in discovery, Defendants sought assistance from this Court. On

---

[8] Dr. Grubb's deposition was electronically filed at CM/ECF Doc. 49.

June 18, 2008, after holding a telephonic discovery conference,[9] Magistrate Judge Black issued an order directing Plaintiff, no later than July 18, 2008, to serve initial disclosures, provide medical releases to defense counsel, and provide Defendants with a written expert report.  (Doc. 15.)  Plaintiff failed to comply with that order.  On August 19, 2008, having not yet received initial disclosures or a written expert report, Defendant Southern Health filed a Motion to Dismiss for Lack of Prosecution.  (Docs. 16, 17.)  Less than a week later, on August 25, 2008, Defendant Ariss filed a Motion for Summary Judgment.  (Doc. 18.)

On January 5, 2009, Magistrate Judge Black issued a Report and Recommendation that Defendant Southern Health's motion to dismiss be denied based in large part on the "quintessential policy which favors disposition of cases on their merits."  (Doc. 30 at 7.)  Magistrate Judge Black also recommended that Defendant Ariss's motion for summary judgment be granted because the "doctrine of *respondeat superior* does not apply in Section 1983 lawsuits to impute liability onto supervisory personnel," and Plaintiff failed to allege that Defendant Ariss had any personal involvement in, condoned, or otherwise approved of the alleged denial of medical care.  (Doc. 30 at 11.)  This Court adopted Magistrate Judge Black's Report and Recommendation on January 29, 2009. (Doc. 33.)  Plaintiff and the remaining Defendant, Southern Health, then participated in limited additional discovery and on June 8, 2009, Southern Health filed a motion for summary judgment.  (Doc. 40.)  Plaintiff responded by filing a

---

[9] The conference was scheduled for June 17, 2008, but Plaintiff's counsel failed to participate, so the conference was rescheduled for June 18, 2008.  (See doc. 30 at 2 n. 2.)

Memorandum in Opposition to Defendant's Motion for Summary Judgment, and Motion for Leave to Amend the Complaint to Add Warren County, Ohio, as a Defendant.[10]  (Docs. 44, 45.)

## II.    PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT

The first half of Plaintiff's four-page opposition to Defendant Southern Health's motion for summary judgment is actually a motion for leave to amend his complaint to add Warren County, Ohio as a Defendant.  Because Plaintiff did not attach a proposed amended complaint, the nature of the claim or claims Plaintiff intends to assert against Warren County remains unclear.  However, the Court assumes that Plaintiff intends to assert a § 1983 claim similar to that raised in the initial complaint.  Plaintiff contends that he did not learn of Warren County's policy prohibiting the administration of Methadone to inmates until he received Defendant Southern Health's motion for summary judgment.  As a result, Plaintiff seeks leave to add Warren County as a Defendant in order to determine who ultimately is responsible for depriving Plaintiff of Methadone while he was in jail.  Defendant Southern Health opposes Plaintiff's motion on the basis that Plaintiff fails to show good cause for his delay in seeking leave and that granting Plaintiff's motion would significantly delay resolution of this case.  (See Doc. 48.)

Because Plaintiff seeks to add a new party, Plaintiff's motion for leave to amend is governed by both Rule 15 and Rule 20 of the Federal Rules of Civil Procedure; however, the Court need not address Rule 20 as it finds that Plaintiff fails to satisfy the amendment requirements established by Rule 15.  Under Rule 15(a), a party may amend a pleading once as a matter of course at any time before a responsive pleading is served, but may otherwise seek

---

[10] The four-page pleading containing Plaintiff's memorandum in opposition and motion for leave to amend was filed twice, once as a memorandum in opposition and once as a motion for leave.  (Docs. 44, 45.)

amendment only by leave of the court or by written consent of the adverse party.  Because cases "should, as far as possible, be determined on their merits and not on technicalities," <u>Cooper v. American Emp. Ins. Co.</u>, 296 F.2d 303, 306 (6th Cir. 1961), courts should "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a).

Nonetheless, a court may deny a motion to amend on the basis of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, or futility of the proposed amendment.  <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Brumbalough v. Camelot Care Ctrs., Inc.</u>, 427 F.3d 996, 1001 (6th Cir. 2005).  The ultimate decision of whether to permit amendments is within the discretion of the court. <u>See Brainard v. American Skandia Life Assur. Corp.</u>, 432 F.3d 655, 666 (6th Cir. 2005).

In the present case, Plaintiff's motion to amend comes approximately two years after the date he first filed his complaint and nearly one year after the close of discovery.  Defendant, Sheriff Ariss, has already been dismissed on summary judgment and the last remaining Defendant's motion for summary judgment is fully briefed and ripe for review.  In the face of such a long delay in requesting leave to amend, the Court must "weigh the cause shown for the delay against the resulting prejudice to the opposing party." <u>Johnson v. Ventra Group, Inc.</u>, No. 96-1463, 1997 WL 468332, at *2 (6th Cir. Aug. 13, 1997) (citing <u>Head v. Timken Roller Bearing Co.</u>, 486 F.2d 870, 873 (6th Cir. 1973)).  "Delay, standing alone, is an insufficient basis for denying leave to amend, and this is true no matter how long the delay." <u>Wallace Hardware Co., Inc. v. Abrams</u>, 223 F.3d 382, 409 (6th Cir. 2000) (citing <u>Moore v. City of Paducah</u>, 790 F.2d 557, 559-62 (6th Cir. 1986)); <u>Tefft v. Seward</u>, 689 F.2d 637, 640 n. 2 (6th Cir. 1982) ("Delay that is neither intended to harass nor causes any ascertainable prejudice is not a

permissible reason, in and of itself[,] to disallow an amendment of a pleading."). "To determine whether an amendment would cause prejudice, a court should consider whether the amendment would: 1) require the opposing party to expend significant additional resources to conduct discovery and prepare for trial; 2) significantly delay the resolution of the dispute; or 3) prevent the plaintiff from bringing a timely action in another jurisdiction." Dottore v. National Staffing Services, LLC, No. 3:06CV01942, 2007 WL 2114668, at *4 (N.D. Ohio July 20,2007) (citing Phelps v. McClellan, 30 F.3d 658 (6th Cir. 1994)). "'[T]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.'" Phelps, 30 F.3d at 662 (quoting Evans v. Syracuse City Sch. Dist., 704 F.2d 44, 47 (2d Cir. 1983)); see also Wade v. Knoxville Util. Bd., 259 F.3d 452, 459 (6th Cir. 2001) ("When amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier.").

Plaintiff suggests the cause for any delay in seeking to add Warren County as a defendant was that he did not learn of the policy prohibiting Methadone until he received Defendant Southern Health's Motion for summary judgment. The Court finds it curious that Plaintiff did not learn of this policy earlier in the case, given that such information would have been readily available had Plaintiff been diligent in conducting discovery. However, it appears from the fact that Plaintiff cites to no depositions or other factual evidence in his opposition to Defendant Southern Health's motion for summary judgment that he conducted little if any discovery. Indeed, Defendant Southern Health represented in its response to Plaintiff's motion to amend that Plaintiff sent no interrogatories and took no depositions. (See Doc. 48 at 1.)

In addition to Plaintiff's failure to show good cause for his delay, the Court finds that granting Plaintiff's request would prejudice Defendant Southern Health in that it would effectively set the clock back to day one and force Southern Health to go through another discovery period before obtaining any resolution in the case.  See R.S.W.W., Inc. v. City of Keego Harbor, No. 07-13951, 397 F.3d 427, 441 (6th Cir. 2005) (affirming the denial of a motion to amend complaint to add new defendant where "there had been undue delay in the filing of the motion and . . . the addition of [the new defendant] would be unduly prejudicial to the existing Defendants given that discovery was already complete"); Johnson v. City of Detroit, 2008 WL 4940589, at *2 (E.D. Mich. Nov. 17, 2008) (denying motion for leave to amend complaint to add new defendants where the discovery cutoff and motions deadline had already passed and granting the motion would require a new wave of discovery).

The Court furthermore finds that Plaintiff's proposed amendment would be barred by the statute of limitations.  Section 1983 actions arising in Ohio are governed by the two-year statute of limitations set forth in O.R.C. § 2305.10.  See Browning v. Pendleton, 869 F.2d 989, 990 (6th Cir. 1989) (en banc); Hodge v. City of Elyria, 126 F. App'x 222 (6th Cir. 2005).  The incidents giving rise to Plaintiff's complaint occurred in December 2005 and September 2006, meaning the statute of limitations has run as to any § 1983 claim stemming from those incidents.  Unless Plaintiff's proposed amendment relates back to his original complaint, the new claim would be barred by the statute of limitations.

Federal Rule of Civil Procedure 15(c) governs the relation back of amendments to the date of the original complaint.[11]  Under Rule 15(c)(1)(C),[12] an amended complaint that adds a

_____

[11] Rule 15(c) provides as follows:

new defendant relates back to the original complaint only if the newly-named defendant "(i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."

Though somewhat unclear, Plaintiff appears to argue that he mistakenly filed suit against Sheriff Ariss in his personal capacity as opposed to Warren County.  (<u>See</u> Doc. 45 at 1-2.)  With regard to the first requirement of Rule 15(c)(1)(C), Plaintiff has not shown that Warren County received sufficient notice such that it will not be prejudiced in defending the suit on its merits.

---

(1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:

    (A) the law that provides the applicable statute of limitations allows relation back;

    (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or

    (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

        (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

        (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(a).

[12] Plaintiff has no greater chance of success under Rule 15(c)(1)(A) because Ohio law governing relation back is no more liberal than federal law.  <u>See</u> Ohio R. Civ. P. 15.

Though Sheriff Ariss is an employee of Warren County, the Court cannot find constructive notice in this case due to the "significant distinction between an official capacity and an individual capacity suit." Dorsey v. Wilkinson, No. 1:05CV1760, 2006 WL 1561493, at *10 (N.D. Ohio June 2, 2006) (denying the plaintiff's motion to amend her complaint to substitute a Warden, sued in her official and individual capacity, for the Director of the Ohio Department of Rehabilitation and Correction, sued in his official capacity only).

More importantly, the Court finds that Plaintiff cannot satisfy the second requirement of Rule 15(c)(1)(C). The Sixth Circuit has repeatedly held that Rule 15(c) "'allows the correction of misnomers, but not the addition or substitution of new parties after the statute of limitations has expired.'" Force v. City of Memphis, No. 95-6333, 1996 WL 665609, at *4 (6th Cir. Nov. 14, 1996) (quoting In re Kent Holland Die Casting & Plating, Inc., 928 F.2d 1448, 1450 (6th Cir. 1991)); see also Cox v. Treadway, 75 F.3d 230, 240 (6th Cir.), cert. denied, 519 U.S. 821 (1996) ("[N]ew parties may not be added after the statute of limitations has run, and that such amendments do not satisfy the 'mistaken identity' requirement."); Jacobsen v. Osborne, 133 F.3d 315, 320 (5th Cir. 1998) (holding that Rule 15(c) "is meant to allow an amendment changing the name of a party to relate back to the original complaint only if the change is the result of an error, such as a misnomer or misidentification").

Plaintiff claims that he originally filed this suit against Sheriff Tom Ariss "in order to have a defendant in the case who controlled the management and policy of the Warren County Jail, while hopefully avoiding the pitfall of Eleventh Amendment Immunity." (Doc. 45 at 1.) Plaintiff therefore explicitly acknowledges that his failure to name Warren County as a defendant was not due to any misnomer or misidentification, but rather due to a conscious choice of whom

15

to sue. The "mistake" provision of Rule 15 "does not encompass an attorney's mistake in choosing whom to sue." <u>Dorsey</u>, No. 1:05CV1760, 2006 WL 1561493, at *10; <u>see also</u> <u>Louisiana-Pacific Corp. v. ASARCO, Inc.</u>, 5 F.3d 431, 434 (9th Cir. 1993) (upholding the district court's denial of a Rule 15 motion where it found "[t]here was no mistake of identity, but rather a conscious choice of whom to sue"); <u>Wilson v. United States Gov't</u>, 23 F.3d 559, 563 (1st Cir. 1994) ("Wilson fully intended to sue GEGS, he did so, and GEGS turned out to be the wrong party. We have no doubt that Rule 15(c) is not designed to remedy such mistakes."); <u>Rendall-Speranza v. Nassim</u>, 107 F.3d 913, 919 (D.C. Cir. 1997) ("In the adversarial system of litigation the plaintiff is responsible for determining who is liable for her injury and for doing so before the statute of limitations runs out; if she later discovers another possible defendant, she may not, merely by invoking Rule 15(c), avoid the consequences of her earlier oversight."). Plaintiff's decision to sue Sheriff Ariss instead of Warren County was a strategic decision, chosen to avoid a claim of Eleventh Amendment immunity. It just so happens that the strategy was not successful. As there was no "mistake" in identity in this case, Plaintiff fails to satisfy the requirements of Rule 15(c). The Court therefore **DENIES** Plaintiff's motion to amend his complaint.


III.    **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

   A.    **Summary Judgment Standard**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the burden of showing that no genuine issues of material fact

are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986). The moving party may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The task of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 249. A genuine issue for trial exists when the evidence is not "so one-sided that one party must prevail as a matter of law." Id. at 252.

In reviewing the evidence set forth by both the moving and non-moving parties, the Court must carefully review "those portions of the submitted evidence designated by" both parties. Guarino v. Brookfield Twp. Tr's., 980 F.2d 399, 410 (6th Cir. 1992). However, the Court will not "sua sponte comb the record from the partisan perspective of an advocate for the non-moving [or moving] party." Id.

**B. Analysis**

Defendant Southern Health moves for summary judgment on the basis that it has no policy prohibiting the administration of methadone to jail inmates, but rather was following a

Warren County Jail policy in refusing to give Plaintiff his prescription methadone. Southern Health also argues that the withdrawal program its staff placed Plaintiff on was proper and did not result in a violation of Plaintiff's rights. Defendant devoted merely one page to his opposition to Defendant's motion for summary judgment. In his brief opposition, Plaintiff cites no evidence and argues only that his claim against Southern Health is not barred by the Eleventh Amendment, despite the fact that Defendant has never argued it is entitled to such immunity.

Plaintiff alleges that Defendant Southern Health was indifferent to his medical needs, resulting in a violation of Plaintiff's "right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution, made applicable to state authorities such as the Defendants by the Fourteenth amendment to the United States Constitution."[13] (Complaint ¶ 5.) "The Eighth Amendment's proscription of cruel and unusual punishments is violated by 'deliberate indifference to serious medical needs of prisoners.'" City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 243-44 (1983) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). To demonstrate such a violation, a plaintiff must satisfy two tests, one objective

_____

[13] Because the Plaintiff alleges violations that occurred both before and after an official adjudication of guilt, his denial of medical care claim falls under both the Eighth and Fourteenth Amendments. See City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983) (Where there has been no "formal adjudication of guilt in accordance with due process of law," "the relevant constitutional provision is not the Eighth Amendment but is, instead, the Due Process Clause of the Fourteenth Amendment." ). However, the Court applies the same "deliberate indifference" standard to both claims. See Linden v. Washtenaw County, 167 F. App'x 410, 415 (6th Cir. 2006) (As the Eighth Amendment does not apply to pretrial detainees, such as the decedent, this right to adequate medical treatment attaches through the Due Process Clause of the Fourteenth Amendment, which affords pretrial detainees rights "analogous" to those of prisoners.); Estate of Owensby v. City of Cincinnati, 385 F. Supp. 2d 626, 647 (S.D. Ohio 2004) (applying the "deliberate indifference" standard to a Fourteenth Amendment medical treatment claim).

and one subjective. See Farmer v. Brennan, 511 U.S. 825, 834 (1994); Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir. 2001). The objective component requires the plaintiff to "allege that the medical need at issue is 'sufficiently serious.'" Comstock, 273 F.3d at 702 (quoting Farmer, 511 U.S. at 834). The subjective component, on the other hand, requires the plaintiff to demonstrate that "the prison official [had] a sufficiently culpable state of mind – one of 'deliberate indifference' to inmate health or safety." Estate of Novack v. County of Wood, 226 F.3d 525, 529 (7th Cir.2000) (quotations & citation omitted). More concretely, to establish deliberate indifference, "the plaintiff must allege facts which, if true, would show that the official being sued perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." Comstock, 273 F.3d at 703.

Plaintiff does not seek to hold liable any individual actor; rather, he asserts his claim against Southern Health, a private corporation. "It is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting 'under color of state law.' Hicks v. Frey, 992 F.2d 1450, 1458 (6th Cir. 1993) (citing West v. Atkins, 487 U.S. 42, 54 (1988)). However, a private entity such as Southern Health cannot be held liable for the actions of its employees under a theory of *respondeat superior*. See id. at 1458; Thomas v. Coble, 55 F. App'x 748, 749 (6th Cir. 2003). Instead, a plaintiff seeking to hold a private entity liable "must plead and prove an injury caused by an action taken pursuant to some official policy or custom." Thomas, 55 F. App'x at 749.

In the instant case, there is sufficient evidence that Southern Health had adopted and was acting pursuant to Warren County Jail's policy prohibiting the administration of Methadone to

inmates. However, Plaintiff's claim cannot survive summary judgment because there is no

evidence that such a policy directs Southern Health staff to act in an unconstitutional manner or

that the policy itself is unconstitutional. See French v. Daviess County, Ky, No. 4:07CV-105-M,

2009 WL 1766928, at *10 (W.D. Ky. June 23, 2009) ("Even if [the plaintiff] were able to

establish that he was placed on a Valium detoxification protocol pursuant to [official policy], his

claim would still fail because there is no evidence that such a policy directs jail personnel to act

in an unconstitutional manner or that the policy itself is unconstitutional.").

Plaintiff points to absolutely no evidence suggesting that, under the circumstances, the

application of Southern Health's detoxification protocol to Plaintiff was improper. To the

contrary, as described in greater detail above, Defendant's expert witness, Dr. Miguel, opined

that the detoxification protocol put in place by the Medical Director of Southern Health at the

Warren County Jail was appropriate and that the placement of Plaintiff on that protocol was

proper. In a recent, factually analogous case, the United States District Court for the Western

District of Kentucky suggested that the plaintiff's failure to provide expert testimony was fatal to

his claim:

> Whether a Valium detoxification protocol is improper is "a factual question
> outside the lay understanding of jurors." Rigney v. Marcum, No. 06-187-REW,
> 2007 WL 2979931, at *10 (E.D.Ky. Oct.11, 2007). Under such circumstances,
> which extends to the § 1983 context, "the law requires expert testimony." Id.
> (citing Alberson v. Norris, 458 F.3d 762, 765-66 (8th Cir.2006)). Here there is
> none to establish that the jail's detoxification protocol was improper.

French, No. 4:07CV-105-M, 2009 WL 1766928, at *10. In this case, Plaintiff points to no

evidence of any kind, let alone any expert testimony, in support of his claim. Moreover, rather

than offering evidence to contradict the opinion of Dr. Miguel, Plaintiff effectively admitted Dr.

Miguel's conclusions by failing to respond to Defendant's statement of proposed undisputed facts.

There is simply no evidence in this case that any policy adopted by Southern Health caused a deprivation of Plaintiff's rights. It is important to note that Plaintiff did receive medical care in this case. Plaintiff was placed on a standard opioid detoxification protocol, was offered medication to alleviate his pain, and was taken to the hospital and to see his treating physician. This case is therefore distinguishable from those cases where jail or prison staff completely ignore the needs of an inmate going through withdrawal. See McNamara v. Lantz, No.3:06-CV-93 (PCD), 2008 WL 4277790, at *14 (D. Conn. Sept.16, 2008) (discussing such cases and noting that "[i]f defendants had ignored plaintiff's request for assistance with detoxification, and left him to withdraw "cold turkey" alone in his cell, then plaintiff's arguments would have validity"). To the extent that Plaintiff disagrees with the manner in which he was subjected to Methadone detoxification, Plaintiff's disagreement with the nature of the treatment he received is insufficient to sustain a claim of deliberate indifference. See Estate of Graham v. County of Washtenaw, 358 F.3d 377, 385 (6th Cir. 2004) (In situations "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law.").

Based on the facts of this case, there is insufficient evidence to establish that the policy prohibiting Methadone or Southern Health's detoxification protocol, as applied to Plaintiff, was unconstitutional and therefore summary judgment is warranted. Accordingly, the Court **GRANTS** Southern Health's motion for summary judgment. See French, No. 4:07CV-105-M,

2009 WL 1766928, at *9-12 (finding no violation of the plaintiff's rights where the plaintiff was placed on a detoxification program and denied his prescription Xanax while in jail); McNamara, No.3:06-CV-93 (PCD), 2008 WL 4277790, at *13-14 (concluding that a jail's methadone detoxification program, which was consistent with the Department of Correction's protocol, was not unconstitutional).

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant' s motion for summary judgment and **DENIES** Plaintiff's motion for leave to amend the complaint.

IT IS SO ORDERED.


___s/Susan J. Dlott_____
Chief Judge Susan J. Dlott
United States District Court